# SUPREME COURT.

## RALEIGH, (N. C.) JULY, 1810.

The State
vs. } MURDER.
John Owen.

In an indictment for murder the length and depth of the wound must be expressed. 2 Hawk. b. 2, c. 33, § 81. 2 Chitty's C. L. 488.

This case came on to be argued before the supreme court on exceptions taken to the indictment in behalf of the prisoner. The exceptions were—That the mortal wounds alleged to have occasioned the death were not *positively* alleged to have been given by the prisoner, but were only to be collected by intendment or implication; and that the length and depth of the wounds alleged were not described to be of any dimensions.

As to the first exception, the judges were unanimous that the wounds were laid to have been given by the prisoner with sufficient certainty, and of course overruled the objection : but as to the last. exception the judges were divided. Judge Taylor, who delivered his opinion, (and with which Judge Locke concurred,) remarked, that in all cases where the wound was charged to have been inflicted with a *blunt* instrument, such as a cudgel or a stick, the court would construe the word " wound" to signify a *bruise;* and that inasmuch as it was admitted that in the case of a *bruise* the dimensions need not. be stated, therefore in his opinion it became useless in the indictment before the court. But Judges Hall, Lowrie, and Henderson held a contrary opinion.

It was by them stated, that in a case of this kind the court had *no discretion.*—It only became necessary to examine the law upon the subject, and to ascertain there-

by whether the indictment in question contained those requisites which the *law* had declared essentially necessary. That if they had been called upon to carve out a system of jurisprudence, whether they would have required such nicety and formality they were unprepared to determine. But being required to pass upon the law as it is written, they felt themselves imperiously bound to determine thereby, disregarding any of the consequences which result from it. That authorities had been produced to the court from which it appeared that there was an uninterrupted chain of adjudication *expressly in point* from the earliest times to the present day : that in all cases of indictment for murder charged to have been committed by the giving of a wound, the nature and description of the wound should be set forth. That these authorities were fortified and supported by the books of precedents, which have *invariably* pursued this nicety, except in a very ancient collection compiled by West about two hundred years ago. That as to the cases from West, in which this formality is not observed, they were susceptible of this remark : that these precedents were in *Latin*, and that the words " *mortalem plagam*" signified either a *mortal wound*, or *mortal bruise ;* but that in the case before the court the indictment was in the English language, and it had charged the murder to have been committed by a mortal *wound*. That at the time this country adopted the common law of England, (if the court were to regard authority,) this formality was required, and being so required by *law*, the court could not dispense with it.

A majority of the court, therefore, being of the latter opinion, the bill of indictment was pronounced exceptionable :

consequently, upon it sentence of death cannot be passed upon the prisoner.

The keeper of the jail having received a mittimus to retain the prisoner, he will of course remain in jail until October term of the superior court, when a new bill will be drawn, and another trial will take place.